IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-01878-RBJ-KMT

C.M.,

    Plaintiff,

v.

JAN BURNS, in her personal capacity,
CHRISTOPHER URBINA, in his personal capacity,
NANCY WOLFF, in her personal capacity,
PATRICIA MOSHURE, in her personal capacity,
RACHELLE BOESPFLUG, in her personal capacity,
MELISSA EVERTS, in her personal capacity,
CHRIS BUGECKI, in his personal capacity,
JASON JOHNSON, in his personal capacity,
WES KUFELD, in his personal capacity,
JANE DOE, in her personal capacity, and
JOHN DOE, in his personal capacity,

    Defendants.

# ORDER

    This matter is before the Court on defendant Jan Burns' Motion to Strike Portions of Plaintiff's Amended and Supplemental Complaint [Doc. #31] and her Motion to Dismiss Plaintiff's Amended Complaint [Doc. #32]. Both motions are hereby granted for the reasons set forth below. The Court sua sponte strikes the remainder of Plaintiff's Amended and Supplemental Complaint for failure to comply with Fed. R. Civ. P. 8(a)(2), with leave to file a Second Amendment Complaint.

# BACKGROUND

C.M. is a registered sex offender in the State of Colorado. He is currently serving a 25-year probationary sentence after pleading guilty to two counts of sexual assault on a child in 2002. His terms of probation include a requirement that he be in a treatment program through the Sex Offender Management Board ("SOMB"). Until October 2011, C.M. was enrolled in a program he refers to as the SOMB Treatment Provider number 1.

C.M. became infected with HIV approximately ten years ago and has been on antiviral medications to treat its symptoms. In the summer of 2006, during a routine test for sexually transmitted diseases, C.M. discovered that he tested positive for chlamydia. At the time he did not exhibit any typical signs or symptoms of the infection, and he was treated with a traditional single dose antibiotic treatment. Later in 2006, C.M. again developed signs and symptoms of chlamydia. According to C.M., he had not engaged in any type of sexual activity since being diagnosed with chlamydia earlier that year. Instead, it appeared that the single dose antibiotic had not worked. He went to Planned Parenthood where he was again prescribed the single dose antibiotic treatment.

After several months of waxing and waning symptoms, C.M. went to his primary care physician. He was informed that it was possible for a person with HIV taking antiviral medications to develop an antibiotic resistant strain of chlamydia. He was then treated with a multi-pill per day, week long antibiotic therapy that killed the infection.

Under Colorado law, a positive test result for chlamydia may be required to be reported to the Colorado Department of Public Health and Environment ("CDPHE") pursuant to C.R.S. § 25-1-122. A positive test result for HIV must be reported to CDPHE pursuant to C.R.S. § 25-4-1403. Based on these disclosures—in particular the multiple diagnoses of chlamydia—C.M. believes that various officers and employees of CDPHE incorrectly assumed that he was

repeatedly engaging in unprotected sexual relations. These employees made attempts to reach out to C.M. about their concern, which resulted in a meeting between C.M. and Pat Moshure, a CDPHE employee, on May 14, 2010.

C.M. informed Ms. Moshure that the repeated chlamydia diagnoses were due to an antibiotic resistant strain of chlamydia, not multiple infections from various partners. According to C.M., Ms. Moshure refused to listen or to consult with his primary care physician. Instead, C.M. felt that Ms. Moshure was unduly focused on his status as a registered sex offender, which she discovered when trying to locate his mailing address.

On May 19, 2010, Ms. Moshure and C.M. had a second meeting. According to C.M., Ms. Moshure demanded that he provide a release of information to permit CDPHE to exchange information regarding C.M.'s HIV status with the Offender Group at the SOMB Treatment Provider number 1. C.M. refused. At this time, Ms. Moshure gave C.M. the option of being given a Public Health Order pursuant to CRS 25-4-1406 or being ordered into counseling with Jan Burns.[1] C.M. chose to undergo ten counseling sessions with Ms. Burns.

Ms. Burns is a private licensed clinical social worker who contracts with CDPHE to provide counseling services for individuals with HIV. She also works through CareNet as a SOMB treatment provider. According to C.M., Ms. Moshure chose Ms. Burns as his counselor because of these dual roles, since C.M. was also a sex offender in a SOMB treatment program. Yet, these ten sessions were to be provided from Ms. Burns through her role as a CDPHE contractor.

In June 2010, Ms. Burns and C.M. met for their first and only session. During the session, Ms. Burns allegedly asked C.M. to execute a blank release of information form.

---

[1] CRS 25-4-1406 gives CDPHE the authority to issue various Public Health Orders, such as an order requiring a person with HIV to report to a qualified physician or health worker for counseling on the disease and for information on how to avoid infecting others.

According to C.M., Ms. Burns wanted to be able to speak to C.M.'s probation officer, SOMB Treatment Provider number 1, and anyone else she deemed necessary. C.M. felt that this would breach Ms. Burns' duty of confidentiality, that her request was unethical, and that it was unlawful for her to condition counseling on a blanket waiver of confidentiality. He alleges that Ms. Burns warned him that if he did not sign and undergo counseling, CDPHE would issue a Public Health Order. C.M., on the other hand, contended that the reason he was seeking treatment from her was separate from and independent of his treatment with SOMB Treatment Provider number 1. He refused to sign the waiver, and the session ended.

C.M. asserts that Ms. Burns was intoxicated during the meeting, and he details the factors that caused him to reach that conclusion. [Doc. #33 at ¶ 29].

On July 12, 2010, Ms. Burns submitted a letter to CDPHE discussing why she needed a blanket release of information from C.M. She took the position that the SOMB guidelines require this blanket waiver of confidentiality when she acts as a SOMB treatment provider. C.M. argues that in her role as CDPHE contractor, as opposed to her role as a CareNet employee, Ms. Burns was not permitted to ask for such a release or to share his confidential information. According to C.M., nothing should have prevented Ms. Burns from counseling him without this release.

C.M. alleges that CDPHE officials then sought to compel him to undergo counseling by issuing a Public Health Order. The Public Health Order was served on C.M.; and when he refused to comply with its terms, CDPHE took him to court. On July 14, 2011, a judge in the Denver District Court held a hearing on the Public Health Order. During that hearing, C.M. argued that Ms. Burns had been unethical in attempting to obtain his signature on a blanket release form.

According to C.M., this statement prompted Ms. Burns to retaliate against him by sending a fax containing confidential medical information to the Arapahoe County Probation Department on August 24, 2011. The fax purportedly disclosed C.M.'s HIV status, made false allegations that C.M. had failed to disclose his HIV status to sexual partners, and made false allegations and that he was engaging in reckless sexual behavior in violation of his probation.

The next day, Terri S. Morrison, an attorney from the Colorado Attorney General's Office, provided detailed instructions to defendants Jason Johnson and Rachelle Boespflug at the Arapahoe County Probation Department concerning the fax. According to C.M., Ms. Morrison warned Mr. Johnson and Ms. Boespflug that Ms. Burns' disclosure of this information was in violation of the law, and that it would be illegal to try to compel C.M. to disclose or confirm the information. C.M. alleges that Mr. Johnson and Ms. Boespflug disregarded this direction, thereby violating his constitutional right to privacy, though he alleges no facts as to what they did with this information or any harm he suffered from the faxed disclosures. [*See* Doc. #33 at ¶ 44].

On October 27, 2011, the Denver District Court judge ruled from the bench on the Public Health Order, finding that the order was valid, and that C.M. was not in compliance with it. The court ordered C.M. to (1) cease and desist from withholding his HIV positive status from sex partners prior to sexual contact; (2) cease and desist from engaging in oral, vaginal, or anal sexual intercourse without the use of latex condoms; (3) cease and desist from engaging in other behaviors that might result in HIV transmission; and (4) submit to ten sessions of risk reduction counseling with SOMB Treatment Provider number 1.[2]

---

[2] The order was later vacated. *Urbina v. C.M.*, No. 11CA2447, 2013 WL 1703469 (Colo. App. April 18, 2013).

According to C.M., defendant Jane Doe—an unidentified officer or employee of CDPHE—had been in attendance during the court's ruling. Once the ruling issued, she immediately disclosed C.M.'s confidential medical information regarding his HIV status and the false allegations that he was engaging in unprotected sex and/or other reckless behavior to the Offender Group at SOMB Treatment Provider number 1. According to C.M., this particular disclosure caused him to be discharged from that program. [Doc. #33 at ¶ 46].

C.M. contends that his discharge from the SOMB Treatment Provider number 1 program led to a false arrest for being noncompliant with the terms of his probation. From there, C.M. has alleged a number of other injuries, including a second false arrest, job loss and loss of income, eviction and subsequent homelessness, a substantial limitation in his ability to obtain gainful employment, additional SOMB treatment program costs, and attorney fees.

C.M. has brought this action under 42 U.S.C. § 1983 arguing, in part, that Ms. Burns acted under color of state law and deprived him of a number of constitutional rights by attempting to have him sign the blanket release form, disclosing confidential information to his probation officers, and attempting to change his sexual preferences.

## ANALYSIS

To plead a claim for relief under 42 U.S.C. § 1983 successfully, a plaintiff must show that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or its laws. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "A defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation." *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006) (alterations and citation omitted). Causation is an essential element

of a section 1983 claim. A plaintiff must show "but for," i.e. proximate, causation in order to hold a defendant liable for the alleged deprivation. *See id.*

A plaintiff may seek damages pursuant to 42 U.S.C. § 1983. The "basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (citation omitted). For this reason, "no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." *Id.* (citation omitted).

## I. MOTION TO STRIKE

Defendant Burns moves to strike the portions of the Amended Complaint that state or suggest that she was intoxicated when she and C.M. met in June 2010.

Under Fed. R. Civ. P. 12(f) a party may request that the court strike any "redundant, immaterial, impertinent, or scandalous matter" contained in a pleading. While motions to strike are generally disfavored, the court has discretion to grant them where the pleadings have "no possible bearing on the controversy" and where the moving party makes "a showing of prejudice." *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997).

An allegation is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Rawson v. Sears Roebuck & Co.*, 585 F. Supp. 1393, 1397 (D. Colo. 1984). A pleading is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Allegations are considered scandalous if they "degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." *Sierra Club*, 173 F.R.D. at 285.

Ms. Burns contends that C.M.'s (detailed) accusations that she was intoxicated, appeared compromised, and was acting bizarrely and erratically when she met with C.M. are immaterial and impertinent because they have no possible bearing on the underlying section 1983 claim. In particular, these statements do not assist the plaintiff in establishing that Ms. Burns was acting under color of state law or that she deprived him of any constitutional rights. In addition, Ms. Burns argues that these statements are scandalous because they attack and degrade her moral character.

C.M. responds that these allegations are in fact material and pertinent because they go to whether he trusted Ms. Burns at their first and only meeting. According to C.M., if he had trusted Ms. Burns—which would have required her not only to have appeared sober, but also to have given him a CV listing her credentials, discussed her treatment methodologies, and refrained from asking him to sign a blanket waiver—then he would have undergone counseling. And, if he had undergone counseling, the situation would not have escalated to the point that Jane Doe disclosed his confidential medical information to the Offender Group at SOMB Treatment Provider number 1. If that had not happened, he would have never been dismissed from the group, would not have violated his probation, and would not have gone to jail.

According to C.M., whether his decision not to trust Ms. Burns and thereby not to enter into a counseling relationship with her was objectively reasonable "is a critical issue in this lawsuit." [Doc. #42 at 9]. It was "one of the first dominos in the chain reaction that followed," *id.* at 9–10, and it "should be clear to the Court that any evidence, directly relevant to any block in the domino chain . . . cannot be stricken from the Amended Complaint pursuant to Rule 12(f)," *id.* at 10.

The Court disagrees. Ms. Burns' condition may or may not be relevant and admissible evidence, but the detailed description provided in the pleading is not pertinent or material to the pleading of a valid claim under 42 U.S.C. § 1983. It amounts to a superfluous attack on Ms. Burns' character, inappropriate for a short and plain statement of the claim.

## II. MOTION TO DISMISS

Defendant Burns moves to dismiss the case against her on the grounds that the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

A party asserting a section 1983 claim must plead two major elements: (1) that he suffered a deprivation of his rights under the Constitution or laws of the United States; and (2) that the deprivation was caused by the defendant acting under color of state law. In order to plead a claim for damages under section 1983, the plaintiff must allege actual injury resulting from the deprivation of his rights.

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

Ms. Burns' argues that C.M. has failed to state a claim for relief that is plausible on its face because (1) she is not a state actor subject to liability under 42 U.S.C. § 1983; and, in the alternative, (2) C.M. did not sufficiently plead facts showing that Ms. Burns subjected him to the alleged deprivation of constitutional rights, or caused him to be subjected to the deprivation. Assuming without deciding that Ms. Burns might be viewed as acting under the color of state law in the circumstances, the Court nevertheless finds that the Amended Complaint does not plausibly plead that C.M. suffered an injury as a result of Ms. Burns' conduct.

C.M. complains of two acts by Ms. Burns. First, he argues that she violated his rights by demanding that he sign a blank release that would have allowed her to disclose his confidential medical information. Second, he claims that his rights were violated when Ms. Burns allegedly disclosed his confidential medical information to his probation department. However, C.M. has not sufficiently pled that he suffered injury from either of these acts.

Tracking the substance of the allegations concerning Ms. Burns, it starts with her demand that he sign a blank form of release. I will ignore the speculation contained in paragraph 31 of the Amended Complaint regarding Ms. Burns' motivation for requesting the release (and, in the same paragraph, further speculation as to Ms. Moshure's similar motives). The fact is, according to the Amended Complaint, C.M. refused to sign the release. The counseling sessions did not proceed, although it appears from the Amended Complaint that they would not have proceeded anyway, as C.M. cites Ms. Burns' alleged intoxication and her failure to provide him with her CV and other disclosures as additional reasons for his unwillingness to proceed.

Because of these problems that caused his one meeting with Ms. Burns to end without counseling, the CDPHE issued a Public Health Order requiring that he participate in the ten counseling sessions with Ms. Burns. However, this order also advised that he had the right to

refuse to comply, the right to a judicial hearing to review the order, and the right to be represented by counsel at such a hearing. [Doc. #26-1 at ¶ 38]. He exercised his right to request a hearing, and he did obtain a hearing. This is where we next hear about Ms. Burns. C.M. alleges that because he argued in court that Ms. Burns had acted unethically, Ms. Burns retaliated by faxing confidential medical information in her possession to the Arapahoe County Probation Office. Assuming the truth of those allegations, we nevertheless read on and learn that the Colorado Attorney General's Office advised the involved personnel in the Arapahoe County Probation Office that Ms. Burns' disclosure of the information was illegal, and essentially, that they should not use it. Although he alleges in conclusory fashion that the probation officers disregarded the advice, he nowhere alleges that they made any use of the information or that he suffered any harm as a result of their having received it.

On the contrary, C.M. alleges that "Jane Doe," an unidentified officer or employee of the CDPHE, sitting in the courtroom during the court hearing, heard the judge's ruling and immediately disclosed C.M.'s confidential medical information to the Offender Group at SOMB Treatment Provider Number 1. That disclosure, C.M. alleges, caused his termination from that offender group, which in turn caused the probation officers in the Arapahoe County Probation Office to assert a probation violation, which (together with the concealment of information from a judge) resulted in the issuance of an arrest warrant, which led to C.M.'s being jailed on the warrant for a period of time before the court dismissed the probation revocation complaint and ordered the probation department to return C.M. to an approved treatment provider. But the provider group wouldn't take him back, leading to another complaint to revoke his probation and, later, another (public and embarrassing) arrest. After being scolded by a judge, the probation office placed C.M. with a new treatment provider. [Doc. #26-1 at ¶¶ 46–52].

So, how does this chain of events give rise to a constitutional claim against Ms. Burns? She demanded a confidentiality release, possibly improperly, but he refused to provide it. The CDPHE then ordered C.M. to return to Ms. Burns but also told him he could refuse to comply, which he did. His more serious charge is that Ms. Burns, allegedly miffed by comments C.M. made about her in a court hearing, retaliated by providing certain confidential information to his probation officers. However, even assuming the truth of that allegation, C.M. acknowledges that the probation officers were instructed by counsel not to use it. There is no allegation that they used the Burns information in any way. Possibly that is something that could be developed in discovery, but at this point, the notion that the information was used to his detriment is pure speculation.

Rather, from the allegations in the Amended Complaint, it was "Jane Doe," not Ms. Burns, who provided confidential medical information that was in fact used to C.M.'s detriment. Ms. Doe allegedly provided confidential information to the treatment provider, who as a result discharged C.M. from their program, which led to an alleged probation violation, etc. In responding to the motion to dismiss, C.M. suggests that Ms. Burns' improper demand for a confidentiality waiver is the event that started the chain of events that ultimately resulted in alleged harm, i.e., the first domino. That is simply too tenuous a connection to show proximate cause.

In short, the Court finds that the Amended Complaint does not state a plausible claim that C.M. sustained damages as a proximate result of unconstitutional conduct by Jan Burns.

### III. THE FORM OF THE AMENDED COMPLAINT

Fed. R. Civ. P. 8(a)(2) requires all federal civil pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court granted plaintiff's motion to amend [Doc. #26] without paying close enough attention to its exhibit.

Having now reviewed the Amended and Supplemental Complaint more closely for purposes of considering the two pending motions, the Court finds that rather than being a short and plain statement of the claim, it is a rambling, unfocused, and unprofessional document. It includes large portions of prose that have little if anything to do with the claims or the defendants at issue. It contains impertinent, immaterial, and to some extent scandalous allegations, such as baldly alleging that certain defendants acted with homophobic agendas. It makes allegations against certain defendants without alleging actual injury. One gets the impression that counsel simply restated in the form of a complaint a rambling story as told to her by the client without exercising sound judgment as to what the legal claims are, what facts must be pled to support those claims, and what parts of the story are better reserved for trial or culled out altogether.

Further, while litigation is inherently adversarial, all parties are bound to show respect for the other parties as well as the Court in their written pleadings and motions. Some of the verbiage in this pleading is offensive and detracts from the persuasive value of the document.

The pleading is therefore stricken. The Court grants leave to file one more amended complaint but directs counsel to pay careful attention not only to Rule 8 but also to Rule 11.

**ORDER**

For the reasons set forth above,

1. The Court GRANTS Defendant Burns' Motion to Strike Portions of Plaintiff's Amended and Supplemental Complaint [Doc. # 31]. Because the Court is striking the entire Amended and Supplemental Complaint, the Court need not specify the particular

portions concerning Ms. Burns that are stricken.  However, any allegations concerning Ms. Burns in the next amended complaint should be made with this order in mind.

2. The Court GRANTS Defendant Burn's Motion to Dismiss Plaintiff's Amended Complaint [Doc. #32].  These claims are dismissed without prejudice, but new claims should be asserted against Ms. Burns only if counsel is satisfied that there is a good faith basis in fact and law for such claims.

3. The Court STRIKES the remainder of Plaintiff's Amendment Complaint as against all Defendants.  The Court GRANTS LEAVE to file a Second Amended Complaint.

DATED this 19th day of March, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge