IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01878-RBJ

C.M.,

     Plaintiff,

v.

CHRISTOPHER URBINA, in his personal capacity for damages;
REBECCA JORDAN, in her personal capacity for damages,
NANCY WOLFF, in her personal capacity for damages;
PATRICIA MOSHURE, in her personal capacity for damages;
RACHELLE BOESPFLUG, in her personal capacity for damages;
MELISSA EVERTS, in her personal capacity for damages;
JASON JOHNSON, in his personal capacity for damages; and

     Defendants.

---

## ORDER

---

Defendants move for dismissal of plaintiff's claims, implicitly under Fed. R. Civ. P. 12(b)(6), contending that the Third Amended Complaint fails to state a claim upon which relief could be granted. ECF No. 82. In addition to responding to the motion, plaintiff moves to strike the exhibits to the motion on grounds that they present facts outside the four corners of the Third Amended Complaint that are inappropriate for consideration on a Rule 12(b)(6) motion. ECF No. 88. For the reasons set forth in this order, the motion to strike the exhibits is denied, and the motion to dismiss the claims is granted.

### PARTIES/CAPTION

I begin by addressing the somewhat elusive question of the proper caption of this case. This lawsuit began upon the filing of plaintiff's original Complaint on July 15, 2013. ECF No.

1.  The caption listed as defendants Jan Burns, Christopher Urbina, Nancy Wolff, Patricia Moshure, Rachelle Boesphlug, Melissa Everts, Jason Johnson and Jane Doe.  In the body of the Complaint plaintiff identified as defendants two individuals not included in the caption: Jennifer L. Weaver and Ann Hause.

Plaintiff replaced the Complaint with his Second Amended Complaint.  ECF No. 33.  The caption listed as defendants Jan Burns, Christopher Urbina, Nancy Wolff, Patricia Moshure, Rachelle Boespflug, Melissa Everts, Chris Bugecki, Jason Johnson, Wes Kufeld, Jane Doe and John Doe.  Again, Jennifer Weaver was identified in the body of the pleading but not included in the caption.  Ann Hause was also mentioned in "The Parties" section but not included in the caption.  On the other hand, Chris Bugecki was included in the caption but not identified as a defendant in the body of the pleading.  This all became moot upon this Court's issuing an order dismissing the claims against Ms. Burns and striking the remainder of the Second Amended Complaint for reasons discussed in its order.  ECF No. 59.

Plaintiff's Third Amended Complaint is captioned "*C.M. v. Pat Moshure, et al.*"  ECF No. 71.  The "Parties and Participants" section it appears to identify as defendants Christopher Urbina, Rebecca Jordan, Nancy Wolff and Pat Moshure (First Claim) and Rachelle Boespflug, Melissa Everts and Jason Johnson (Second Claim).  I have re-captioned the case to be consistent with the Third Amended Complaint and to make clear that these seven individuals are the only remaining defendants in this case.

## MOTION TO STRIKE EXHIBITS

Before turning to the motion to dismiss I first address plaintiff's argument as to what the Court can properly consider in its analysis of that motion.  The focus of attention must be on the alleged facts.  To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts

to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002).  Purely conclusory allegations are not entitled to be presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  But so long as the plaintiff offers sufficient factual allegations that, when afforded the presumption of truth, raise the potential right to relief above the speculative level, he has met the threshold pleading standard. *See Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

Generally, if matters outside the pleadings are presented in support of a Rule 12(b)(6) motion, courts must either exclude them or treat the motion as one for summary judgment.  Fed. R. Civ. P. 12(d).  However, there are certain exceptions to that rule.  Facts subject to judicial notice may be considered without converting the motion to a summary judgment motion. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Documents that are matters of public record may be considered to show their contents, not to prove the truth of the matters asserted. *Id.* Documents that are referenced in and are central to the complaint may be considered if the parties do not dispute their authenticity. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1394 (10th Cir. 1997).

Turning to the exhibits to defendants' motion to dismiss, Exhibit A is a "Complaint for Revocation of Sex Offender Supervision Probation" filed in the Arapahoe County District Court in Case No. 95CR2596 on March 26, 2012.  ECF No. 82-1.  The Complaint, signed by probation officers Melissa Everts and Jason Johnson, seeks revocation of C.M.'s probation in that

jurisdiction.  This is a public record, the authenticity of which is not disputed, and can be

considered for its contents.  Moreover, it is expressly referenced in the Third Amended

Complaint and is central to plaintiff's claims against Ms. Everts and Mr. Johnson.  *See* ECF No.

71 at ¶¶ 48, 65.

Exhibit B is a warrant for C.M.'s arrest issued by a district judge in the Arapahoe County

District Court on November 3, 2011.  ECF No. 82-2.  Again, it is a public document, the

authenticity of which is not disputed, that this Court can consider for its contents, not its truth.

Also, plaintiff refers to the warrant in his Third Amended Complaint, and it is central to the

claims against the probation officers.  *See id.* at ¶ 65.

Exhibits C through F and I are portions of the Standards and Guidelines issued by the

Colorado Sex Offender Management Board.  ECF No. 82-3 through 82-6 and 82-9.  The

Guidelines are referenced in the Third Amended Complaint.  ECF No. 71 at ¶¶ 3, 31.  Plaintiff

alleges, for example, that Ms. Burns' demand was based on her position that the SOMB

Standards and Guidelines required it.  *Id.* at ¶ 31.  They are public documents, the authenticity of

which is not disputed, and as such they may be considered for their contents.  Nevertheless,

while I am satisfied that the Court can properly consider the SOMB Standards and Guidelines, I

have not found it necessary to do so.  *See* discussion of the motion to dismiss *infra.*  Therefore,

plaintiff's concern about reference to these exhibits is moot.

Exhibit G is a written order issued by Judge Jones of the Denver District Court on

October 28, 2011 in Case No. 2011CV4568, *Christopher E. Urbina v. C.M.*, based on hearings

the court conducted on July 14 and October 27, 2011.  ECF No. 82-7.  Exhibit H is a transcript of

Judge Jones' bench ruling of October 27, 2011 on which the written order of the next day was

based.  ECF No. 82-8.  The plaintiff refers several times to this Denver District Court case,

including the July 14, 2011 hearing, the October 27, 2011 bench ruling, the October 28, 2011 written order, and the Colorado Court of Appeals' later vacation of that order, in his Third Amended Complaint.  ECF No. 71 at ¶¶40, 41, 43, 44, 46.  It is central, at a minimum, to plaintiff's claim that defendant Rebecca Jordan misinterpreted the order as authorizing her to provide certain confidential information about C.M. to his SOMB Treatment Provider.  *See id.* at ¶44, 63.  In addition, these documents are public records, the authenticity of which is not dispute, and can be considered on that basis for their contents.  Finally, they are actual court rulings of which I take judicial notice, again for their contents rather than their truth.

In sum, the exhibits of which plaintiff complains are fair game for consideration on a Rule 12(b)(6) motion without conversion to a summary judgment motion.

## MOTION TO DISMISS

### FACTS

The Court assumes the truth of the following facts as alleged in the Third Amended Complaint or otherwise properly established, unless otherwise noted.

#### A.  The Plaintiff.

In October 2002 the plaintiff, C.M., pled guilty to two counts of sex assault.  In December 2002 he was sentenced to probation for 25 years.  He was required to complete sex offense specific therapy as a condition of probation, and he began this therapy with an approved Colorado Sex Offender Management Board (SOMB) provider.

In 2005 C.M. tested positively for the Human Immunodeficiency Virus (HIV), a condition acquired from a consensual same sex partner who misrepresented that he had tested negatively for HIV.  C.M.'s status was reported to the Colorado Department of Public Health and

Environment (CDPHE) as required by Colorado Revised Statutes § 25-4-1402(2).  C.M. began

treatment under the direction of his primary care physician.

**B. 2006-2010.**

As part of his HIV treatment plaintiff's doctors routinely tested for other sexually

transmitted diseases.  A test taken in the late summer of 2006 was positive for chlamydia.  This

too was reported to the CDPHE.  C.M. attributes this infection to the infidelity of a sexual

partner in a committed relationship.  He was treated with a single dose antibiotic as

recommended by the Center for Disease Control.  Nevertheless, signs and symptoms of

chlamydia reappeared later in 2006, even though C.M. had not engaged in sexual activity since

being diagnosed with chlamydia.  Once again he received a single dose antibiotic.

The signs and symptoms of chlamydia came and went over a period of four years.  This

was not a new infection but was the same chlamydia infection that was originally diagnosed in

the summer of 2006.  The single dose antibiotic treatment was unsuccessful because C.M. had

developed a resistance due to his ongoing treatment for HIV.  Finally, upon being given a week-

long, multi-pill per day antibiotic regimen the chlamydia was cured.

The plaintiff alleges that the CDPHE incorrectly assumed that the repeated positive tests

for HIV and chlamydia meant that he was repeatedly engaging in unprotected sexual relations.

On more than one occasion CDPHE representatives went to C.M.'s residence, without advance

notice, to discuss the Department's concerns with him.  They did not find him at home,

apparently because his work and travel schedules kept him away a great deal of the time.  But the

CDPHE incorrectly assumed that he was "out trolling for casual sexual partners, and was busily

engaged in spreading around HIV and chlamydia."  Third Amended Complaint at ¶22.  These

allegations concerning the CDPHE's assumptions are speculative and conclusory.  I do not

accept them as true, but I include reference to them as a transition to the specific allegations that come next.

###### C. **Pat Moshure.**

Beginning here I will recite the facts on a defendant by defendant basis, not necessarily in strict chronological order, as this helps to understand what the plaintiff is alleging against each of them.

On May 5, 2010 a CPDHE representative, Brett Avila, left a letter at C.M.'s residence indicating that he had important confidential information to discuss with him.  C.M. contacted Mr. Avila who in turn directed him to contact Pat Moshure, another CDPHE employee.  C.M. met with Ms. Moshure on May 14, 2010.  C.M. explained that his repeated positive chlamydia tests were due to a single infection from an antibiotic-resistant strain, but according to C.M., Ms. Moshure refused to consult his physician to verify this.  Rather, she was focused on his status as a registered sex offender, accused him of infecting people with HIV, and indicated that she would do everything "'everything possible to make sure everyone knows about this.'"  *Id.* at ¶ 24.  C.M. alleges that Ms. Moshure unlawfully demanded that he provide contact information for his probation officer and sex offender treatment provider, and that she repeatedly badgered and harassed him including repeatedly showing up unannounced at his place of employment, his residence, and parking lots where he parked his vehicle.  "Under duress, C.M. reluctantly disclosed the name of his probation officer and treatment provider" to Ms. Moshure.  *Id.*

During a meeting on May 19, 2010 Ms. Moshure demanded that C.M. provide the CDPHE with a release permitting CDPHE to exchange information regarding his HIV status with his SOMB sex offender treatment provider.  C.M. (who is trained as a lawyer but was suspended from the practice of law) "refused, as was his legal right." *Id.* at ¶25.  Ms. Moshure

then gave him the option of either participating in 10 counseling sessions with therapist, Jan

Burns, or being given a Public Health Order pursuant to C.R.S. § 25-4-1406, such as an order not

to have sex without disclosing his HIV status or not to have unprotected sex.  C.M. elected to

attend the counseling sessions.

In her referral memo to Ms. Burns, Ms. Moshure stated,

> Of note is that since 2008, all of C.M.'s sex partners have been under the age of
> 22 years except one.  He sees no connection between his dating young men and
> his previous sex offense.  He is very smart, he knows the age of consent and has
> been walking that line.  He has an excuse for all the non-disclosure charges
> against him.  Another sex partner related that he told him he was low risk because
> he has an undetectable viral load so they didn't use condoms.  I questioned him
> about his responsibility toward protecting sex partners and he didn't respond and
> diverted the conversation.  His current partner is 20 years old and knows all about
> his status, which has been verified by us.  Since he won't allow me to contact his
> therapist, he was given the option of a PHO or meeting with you. . . .  [W]e would
> like to see you address the dating younger men issue and tie that into
> nondisclosure.  He's going to deny the non-disclosure and try to convince you that
> dating young men is not an issue, he will tell you that he's in a committed
> relationship with his current partner and is settling down for good.  He will most
> likely pull out a recent term paper he wrote on HIV on which he received 100% as
> a way to indicate he's all about safe sex behaviors.

*Id.* at ¶32.

C.M. was unaware of this referral memo until his probation officer gave him a copy of it

in January 2012.  He alleges that nothing in C.R.S. § 24-4-1406 authorizes counseling to address

"dating younger men" where both individuals are above the age of consent, and that Ms.

Moshure's "goal was to abridge C.M.'s First and Fourteenth Amendment rights to association by

trying to force C.M. from associating with and having sex with younger men—all of whom were

consenting adults."  *Id.* at ¶33.

In June 2010 C.M. met with Ms. Burns, who was a Licensed Clinical Social Worker

under the supervision of the Colorado Division of Regulatory Agencies.  C.M. alleges that Ms.

Burns failed to provide him with disclosures required by C.R.S. § 12-43-214, i.e., a CV, her

treatment methodology, and an explanation of any exception to confidentiality.  Most importantly, Ms. Burns demanded that C.M. execute a blank release of information form so that she could talk with his probation officer, SOMB treatment provider, and anyone else she "deemed necessary."  Ms. Burns warned C.M. that if he refused to sign the release, she would report his lack of cooperation to the CDPHE, which would then issue a Public Health Order.  C.M. alleges that Ms. Burns, like Ms. Moshure, assumed that he was violating the terms of his probation by having undisclosed sex partners.  C.M. refused to sign the release form, and therefore, he had no counseling sessions with Ms. Burns.

Ms. Moshure then attempted to compel counseling with a Public Health Order.  *Id.* at 34.  This "Counseling Order," dated August 26, 2010, was served on C.M. on October 27, 2010 in the office of Briana Sprague, another CDPHE employee.  The order misrepresented that C.M. had been identified to CDPHE as a sex and/or needle sharing partner who did not disclose his HIV status prior to engaging in sexual relations, and that there was clear and convincing evidence that C.M. continues to demonstrate behavior that endangers the health of others.  C.M. alleges that the alleged clear and convincing evidence was nothing more than the multiple chlamydia reports.  The order required that C.M. (1) report to a qualified physician or health worker for counseling about HIV and avoiding exposure of others, and (2) complete 10 sessions of risk reduction counseling from Jan Burns within three months of the date of the order (thus by approximately October 26, 2010).  The order also provided that C.M. had the right to refuse to comply with the order, to have a district court review or the order, and to be represented by counsel at the hearing.  *Id.* at ¶ 36.

On November 16, 2010 Mr. C.M. received a letter from his primary care physician which advised "To Whom it May Concern" that C.M. had received information and counseling at the

physician's office regarding exposure to and transmission of HIV, and that C.M. had expressed his understanding of the issues and was able to repeat back what he had been told.  The letter invited anyone with questions to contact the physician.  The original of the letter was delivered to Ms. Moshure the next day, November 17, 2010, with a copy to CHPHE's section chief.  According to C.M., this made it obvious that he did not need 10 counseling sessions.  *Id.* at ¶ 38.  However, Ms. Moshure refused to look at the information, because her goal was to force C.M. to choose older sex partners, not the manner in which he engaged in sex with his chosen sexual partners.  *Id.* at ¶ 40.

### D.  <u>Nancy Wolff</u>.

The Public Health order dated August 26, 2010 and issued (apparently) by Ms. Moshure also indicated that if C.M. was unwilling to attend the counseling sessions with Ms. Burns, he should so advise Nancy Wolff at the CDPHE.  He called Ms. Wolff on October 27, 2010 and explained that he had attempted to comply with the requirement for counselling with Ms. Burns, but she had unlawfully refused to provide the service unless he signed a blanket release of information.  Ms. Wolff told him that his only option was to comply with Ms. Burns' demand for the blanket release.  *Id.* at 37.  C.M. alleges that she too had a goal of forcing him to choose older sex partners, not the manner in which he engaged in sex with his chosen sexual partners.  *Id.* at 40.

### E.  <u>Christopher Urbina</u>.

The CDPHE issued a number of Public Health Orders to C.M. but took "no judicial steps to obtain an enforceable order until May 16, 2011.  On that date a Notice to Cease and Desist, dated April 4, 2011 and signed by Christopher Urbina, then the Executive Director of the CDPHE, was served on C.M.  The order required that he "(1) cease and desist from withholding

his HIV positive status from sex partners prior to sexual contact; (2) cease and desist from

engaging in oral, vaginal or anal sexual intercourse without proper latex condom use; and (3)

cease and desist from engaging in other behaviors that may result in HIV transmission such as

sharing injection drug use paraphernalia with other persons and donating blood, plasma, sperm,

organs or tissues." *Id.* at ¶40.  C.M. was already doing those things.  He alleges that Mr. Urbina

and his subordinates were ignorantly concluding that he was engaging in unsafe sexual practices,

and that they would have known better if they had not refused to look at the information from his

primary care physician.  *Id.*

On June 28, 2011 Mr. Urbina commenced *Urbina v. C.M.*, Denver District Court case

No. 2011CV4568 to enforce the April 4, 2011 Notice to Cease and Desist.

**F.  <u>First Hearing – July 14, 2011</u>.**

A hearing was conducted on July 14, 2011 in the Denver District Court.  C.M. argued

that Ms. Burns was acting improperly in demanding a release of information, and that he was

justified in refusing to sign it.  The Third Amended Complaint does not indicate what, if any,

ruling was issued at that time.  According to the Colorado Court of Appeals, as discussed in

more detail *infra,* the district court found that there was enough reason for the CDPHE to insist

that C.M. participate in 10 sessions of behavioral counseling with someone who specialized in

the relevant types of behavior but that it would not affirm the requirement that C.M. sign a

release without a better demonstration that this was warranted.  *Urbina v. C.M., Case No.*

11CA2447 (Colo. App. April 18, 2013, Slip Op. at 6.  The Slip Opinion was filed by the plaintiff

as an exhibit to his response.  ECF No. 89.

### G.  Rachael Boespflug, Jason Johnson and Melissa Everts.

On August 24, 2011 Ms. Burns faxed confidential medical information regarding C.M., which she had received from the CDPHE, to Rachael Boespflug, a probation officer at the Arapahoe County Probation Department which was supervising C.M.'s probation.  The fax included Ms. Moshure's May 19, 2010 referral memo.  The fax disclosed C.M.'s HIV status.  It also disclosed the allegedly false anonymous claims that C.M. had failed to disclose his HIV status to various sexual partners, and that he was engaging in reckless sexual behavior with multiple undisclosed partners in violation of his probation.  *Id.* at ¶41.

The next day, August 25, 2011, an attorney in the Colorado Attorney General's Office advised Ms. Boespflug and Jason Johnson, her supervising probation officer in the Arapahoe County Probation Office, that Ms. Burns' disclosure to their office was a violation of law.  She warned them not to try to obtain, or to compel C.M. to disclose, the anonymous sources, and that they would have liability exposure if they exchanged information with others concerning C.M.  C.M. was unaware of this advice until January 2012 when it was disclosed to him by the probation department.  *Id.* at ¶42.

As I will discuss *infra* when I get to defendant Rebecca Jordan, C.M. was discharged from his sex offender treatment group at Aurora Mental Health on or about October 31, 2011.  On November 2, 2011 Ms. Boesphflug and Mr. Johnson sought an arrest warrant from the Arapahoe County District Court on the basis of his discharge.  *Id.* at ¶45.  C.M. alleges that the two probation officers failed to disclose that there were no witnesses to his alleged violation of probation.  *Id.*  A warrant was issued, and C.M. was arrested on November 3, 2011.  *Id.* at ¶47.  After being held in jail for 77 days, the court determined that there was no evidentiary support

for the alleged probation violation and directed the probation department to return C.M. to an approved treatment provider.  *Id.*

Aurora Mental Health refused to readmit C.M.  Three other approved SOMB treatment providers also refused to accept C.M. into their treatment programs, all allegedly because Ms. Boespflug, Mr. Johnson and another probation officer, Melissa Everts, refused to inform them that C.M. had been wrongfully terminated by Aurora Mental Health.  *Id.* at ¶48.

The Arapahoe County Probation Department has a policy of seeking the arrest of offenders who have been refused treatment by three SOMB treatment providers.  Therefore, on March 26, 2012 Ms. Boespflug, Mr. Johnson and Ms. Everts again sought revocation of probation and an arrest warrant.  In seeking the warrant they did not advise the court that C.M. had cooperated with the referrals, or that the probation officers had refused to explain to the treatment providers why C.M. was terminated from Aurora Mental Health and why it was not his fault.  C.M. was arrested on March 27, 2012 and held in jail for seven days before he was released on a personal recognizance bond.  When the matter was heard on May 3, 2012, and after C.M.'s lawyer informed the court of the three probation officers' intentional actions to prevent C.M. from getting back into a treatment program, the court ordered them to provide additional information to prospective providers.  C.M. was then referred to four new treatment programs. He was accepted by one of them and started treatment on July 3, 2012.  *Id.* at ¶50.

C.M. was assigned a new probation officer, Chris Bugucki.  But, in retaliation for filing the present lawsuit (on July 15, 2014), Mr. Johnson directed Mr. Bugucki to schedule a maintenance polygraph with a polygraph examination company that he knew conducted examinations in violation of SOMB standards in order to produce a larger percentage of failed polygraphs.  *Id.* at ¶52.  C.M. was tested on September 25, 2013, and on October 7, 2013 he was

informed that he had failed the test.  The Third Amended Complaint does not indicate whether C.M. suffered an adverse consequence as a result of failing this polygraph.

On September 28, 2013, while in Estes Park, Colorado to teach a class, C.M. was detained by the Estes Park police and accused of impersonating a police officer because he was driving a Crown Victoria which had been an unmarked police vehicle before C.M. bought it, and because C.M. was observed tapping his brake lights at another vehicle that was engaging in road rage in a manner similar to that of a police officer.  The Larimer County District Attorney's Office refused to file charges.  Nevertheless, Estes Park police sent out a "Be on the Lookout For" notice to law enforcement statewide, indicating that C.M., a registered sex offender, was impersonating a police officer.  Estes Park police also emailed probation officers Bugucki and Johnson and requested that they issue an order prohibiting C.M. from ever returning to Estes Park.  They did so, thereby violating C.M.'s First Amendment rights.  Third Amended Complaint at ¶ 56(c).

Because of his two false arrests for probation violations, C.M. lost his job at a hotel, spent 77 days in jail, lost his condominium lease and his security deposit, was rendered homeless, could not complete the Fall 2011 semester at Metro State University and lost the tuition and fees he had paid, had his car impounded, lost his FBI security clearance at Denver International Airport, was impaired in his ability to obtain gainful employment, had to repeat work he had previously completed at Aurora Mental Health at substantial expense, and incurred attorney's fees and costs in *Urbina v. C.M.*  *Id.* at ¶57.

## H. Second Hearing – October 27, 2011.

Back to October 2011.  At the conclusion of the second hearing in *Urbina v. C.M.*, the court, by Hon. A. Bruce Jones, announced certain findings from the bench.  He found that, in

light of the CDPHE's findings and desire to protect the public health, counseling was warranted

for C.M.; and that in order to receive effective counseling, it is "critical" that there be a sharing

of information between the CDPHE and Aurora Mental Health (the SOMB sex offense treatment

provider) about what C.M. is making known to Aurora Mental Health.  The court recognized that

C.M. had privacy interests but concluded that there is no absolute protection of C.M.'s health

information "when it intersects with an overriding need to protect the public health."  Transcript,

ECF No. 82-8, at 5-6.

The court found that the CDPHE did not have a reasonable interest in knowing whether

C.M. was accessing sexually explicit materials on line (although Aurora Mental Health might),

but that "[w]hat the Department really needs to know is is he engaging in risky sexual activities

with respect to the transmission of HIV and informing his sexual partners about that."  *Id.* at 6.

The court ordered (pursuant to a CDPHE request) that C.M. receive 10 risk reduction counseling

sessions, not with Ms. Burns but with Aurora Mental Health.  *Id.* at 7.  The court further ordered

that the CDPHE and Aurora Mental Health could exchange information about (1) C.M.'s HIV

status; (2) whether he is engaging in high risk behaviors for the transmission of HIV; (3) whether

he is adequately and appropriately informing his sexual partners about his HIV status; (4)

including the presence of other sexually transmitted diseases.  *Id.*

The court found, however, that the CDPHE was not entitled to know about other aspects

of his counseling at Aurora Mental Health, and that C.M. was not required to sign a release, as

this would be pointless in light of the court's order.  *Id.* at 7–8.  Finally, the court agreed that the

copy of C.M.'s mental health records provided to Ms. Burns be returned to Aurora Mental

Health or destroyed.  *Id.* at 10–12.

The court reduced its orders to writing in an order issued the next day, October 28, 2011.

ECF No. 82-7.  Specifically, the written order states,

> Respondent is hereby restricted from (1) withholding information regarding his HIV positive status from sex partners prior to sexual contact; (2) engaging in oral, vaginal, or anal sexual intercourse without proper latex condom use; and (3) engaging in other behaviors that may result in HIV transmission, such as sharing injection drug paraphernalia with other persons or donating blood, plasma, sperm, organs or tissue.  Furthermore, Respondent shall submit to 10 sessions of risk reduction counseling with Aurora Mental Health.  Such counseling sessions shall be in addition to, but may be held in conjunction with, any counseling sessions he currently submits to at Aurora Mental Health.  The sessions must be initiated within 15 days of receipt of this Order, and all sessions must be completed within three months thereafter.
>
> Additionally, *the Department and Aurora Mental Health may exchange information regarding Respondent's HIV status and whether Respondent is complying with the Department's order, including whether Respondent is adequately and appropriately informing sexual partners about his HIV status and whether he has contracted other STDs transmitted in a means similar to HIV.* However, the Court does not find that the Department is entitled to know about other, unrelated, aspects of Respondent's counseling at Aurora Mental Health, and will not permit the exchange of information outside the scope discussed above.

*Id.* (emphasis added).

### I. <u>Rebecca Jordan</u>.

Rebecca Jordan, another CDPHE employee, was in the courtroom on October 27, 2011 when Judge Jones issued his bench ruling.  C.M. alleges that Ms. Jordan "recklessly interpreted the Denver District Court Order to give her carte blanche to disclose any confidential information regarding C.M."  Third Amended Complaint [ECF No. 71] at ¶44.  Ms. Jordan met with representatives of Aurora Mental Health on October 31, 2011.  C.M. alleges that she disclosed information beyond what the court authorized, specifically, "confidential medical information regarding his HIV status and the false allegations that he was engaging in unprotected sex with multiple under-aged partners."

As a result of Ms. Jordan's disclosures C.M. was wrongfully discharged from his treatment group at Aurora Mental Health.  *Id.*  This in turn resulted in the complaint to revoke probation, arrest and the problems with SOMB treatment providers described *supra* in the discussion of the alleged facts concerning the three probation officers.

### J.  Vacation of District Court Order.

Approximately one and one-half years after the state district court issued its written order the Colorado Court of Appeals vacated the order.  *Urbina v. C.M.,* Case No. 11CA2447 (Colo. App. April 18, 2013 (the Slip Opinion was filed by the plaintiff as an exhibit to his response, ECF No. 89).  The court reviewed the history starting with C.M.'s positive HIV test in February 2005; positive chlamydia tests on six dates between November 2006 and May 2010; CPPHE's referral to a behavioral counselor (Ms. Burns) for intensive counseling; the counselor's condition that he provide a release giving her access to information from his sex offender therapy at Aurora Mental Health, and C.M.'s refusal to sign the release; C.M.'s subsequent failure to comply with a series of four Public Health Orders issued by the CDPHE; and finally, CDPHE's petition for a court order enforcing compliance with the last Public Health Order.  Slip Op. at 2–4.  The court observed that the district court had relied upon certain hearsay evidence that it had admitted only for the limited purpose of tracking the procedural history and determining the basis for CDPHE's position.  Notably, this included reports received between December 2008 and May 2010 from three unnamed individuals purportedly identifying C.M. as a sex partner who did not disclose his HIV status to them.  The court concluded that evidence not admitted for the truth of the matter asserted was insufficient competent evidence to sustain a finding that the CDPHE orders were supported by "clear and convincing evidence."  *Id.* at 13–18.

## CONCLUSIONS

Based on the foregoing facts, C.M. asserts two claims.  His First Claim, asserted against the CDPHE defendants (Urbina, Jordan, Wolff and Moshure), contends that their actions violated C.M.'s First, Fourth and Fourteenth Amendment rights to free association, due process and freedom from unlawful restraints on his liberty.  Third Amended Complaint [ECF No. 71] at ¶¶ 58–64.  His Second Claim, asserted against the Arapahoe County Probation Office defendants (Boesplug, Everts and Johnson) contends that their actions violated his Fourth and Fourteenth Amendment right to be free from unreasonable and unlawful deprivation of his liberty.  *Id.* at ¶¶ 65–66.  As to both claims C.M. seeks nominal damages, compensatory damages, punitive damages, attorney's fees and costs against each defendant individually.

The motion to dismiss asserts five arguments: (1) the claims against Ms. Moshure, Ms. Wolff and Mr. Urbina are barred by the statute of limitations; (2) plaintiff has failed to plead sufficient facts to support a claim of a constitutional violation against Ms. Moshure, Mr. Urbina, Ms. Wolff and Ms. Jordan; (3) Ms. Moshure, Mr. Urbina, Ms. Wolff and Ms. Jordan are entitled to qualified immunity; (4) plaintiff has failed to plead sufficient facts to support a claim of a constitutional violation against Ms. Everts, Ms. Boespflug and Mr. Johnson; and (5) Ms. Everts and Ms. Boespflug are entitled to qualified immunity.  Because I conclude that each of the seven defendants is entitled to the protection of qualified immunity, I need not address the limitations issue.

### A.  Qualified Immunity.

Public officials are generally presumed to be immune from civil damages unless their conduct violates clearly established constitutional rights of which a reasonable official would

have known.  *See, e.g., Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013).  Thus, to overcome the presumption the plaintiff has the burden to show (1) that a reasonable jury could find facts supporting a violation of a constitutional rights, and (2) that the right was clearly established at the time of the alleged violation.  *Cf. Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (addressing a motion for summary judgment).

District courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The first prong might be more difficult to resolve at the initial pleading stage.  However, the second prong involves the state of the decisional law at the time of the incident.  In the present case I will address only the second prong.

A right is deemed clearly established for purposes of qualified immunity protection when it sufficiently clear "that every reasonable official would have understood that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Fogarty  Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008).  The controlling precedent need not "squarely hold the challenged action unlawful," but its unlawfulness must be apparent in the light of pre-existing law.  *Lynch,* 703 F.3d at 1153.  When a defendant moves to dismiss based on a claim of qualified immunity, "the burden [is] on the plaintiff to show . . . that the constitutional right was clearly established at the time of the alleged violation."  *Id.* at 1158.

B.  **The CDPHE Defendants**.

C.M. asserts in substance that the CDPHE defendants attempted to interfere with his right to freedom of association, namely, his right to engage in lawful sexual relations with competent adults above the age of consent, contrary to the First and Fourteenth Amendments.  Third Amended Complaint [ECF No. 71] at 59.  He further alleges that the CDPHE defendants attempted to cause him to waive his right to the privacy of his confidential medical records, contrary to his privacy rights under the Fourth and Fourteenth Amendments.  Finally, he alleges that the four defendants maliciously prosecuted *Urbina v. C.M.* in the Denver District Court without competent evidence, thereby violating his Fourteenth Amendment right to procedural due process.  It is a long reach to suggest that an attempt to interfere with a constitutional right is a violation of the right.  It is also a very long reach to suggest that the filing of a lawsuit, in which the Department for the most part prevailed at the district court level, was a malicious prosecution or due process violation.

However, as indicated above, I find no need to address the ultimate merits of these claims.  The bigger problem is that the plaintiff, in response to the pending motion, makes essentially no effort to show that the alleged violations were clearly established by Supreme Court or Tenth Circuit precedent or by a consensus of other circuits or other authorities.  An examination of the alleged facts makes this deficiency clear.

The first of the four CDPHE defendants to have contact with C.M. was Pat Moshure. Construing plaintiff's allegations in his favor, Ms. Moshure did not verify that his chlamydia history derived from a single infection, and because of his medical history and status as a registered sex offender, she believed that he was a having frequent sexual relations without notifying partners of his medical history.  She also wanted him to desist in having sex with what

she considered to be inappropriately young male partners.  So what did she do?  She referred him

to Jan Burns for counseling sessions.  C.M. did not participate, because he refused Ms. Burns'

demand that he provide a release that would permit her to communicate with his sex offense

treatment provider.  I will assume, for present purposes, that he was within his rights to decline

to provide a release.

There is no allegation that Ms. Burns or Ms. Moshure did provide confidential

information about C.M. to the treatment provider, Aurora Mental Health.  Instead, Ms. Moshure

issued a Public Health Order requiring C.M. to complete 10 sessions of risk reduction counseling

with Ms. Burns but indicating that he had the right to refuse to comply with the order and to have

the order reviewed by a district court judge.  He exercised his right not to comply.

That appears to be the substance of Ms. Moshure's involvement in this matter.  Although

I assume for present purposes that Ms. Moshure wrongly accused C.M. of sexual misconduct and

wrongly wished to interfere with his choice of younger males of legal age as sex partners.  But

the critical legal point is that regardless of what C.M. thinks of Ms. Moshure's motives, he does

not explain how Ms. Moshure should reasonably have been expected to know that her actual

actions were contrary to C.M.'s constitutional rights.  He cites no Supreme Court or Tenth

Circuit or other authority that would suggest that a public health official who requires an

individual with HIV or multiple sexually transmitted diseases to obtain counseling reasonably

should be expected to know that this potentially runs afoul of the United States

Constitution.

The claims against the other CDPHE defendants are even more tenuous.  Christopher

Urbina signed a Notice to Cease and Desist that precluded C.M. from doing three things that

C.M. acknowledges he was already not doing.  And, Mr. Urbina signed the state court petition in

his capacity as the Executive Director of the Department.  Nancy Wolff told C.M. that he should

sign the release requested by Ms. Burns, which again he (lawfully) declined to do.  Rebecca

Jordan provided information to Aurora Mental Health after attending the October 27, 2011

hearing where the court expressly permitted the exchange of information between the CDPHE

and Aurora Mental Health.  If she provided more information than the court authorized, there is

no indication that she knew, or based upon any controlling precedent or otherwise reasonably

should have known, that by providing the information she was violating C.M.'s constitutional

rights.

Essentially what we have in this case is four public health officers who, in an attempt to

protect individuals from contracting a potentially deadly disease, ordered C.M. to participate in

counseling sessions with a therapist of their choice and to promote an exchange of information

between that therapist and the sex offense treatment provider whom C.M. was seeing as a

condition of probation for a sex offense.  Their methods might at times have been excessive or

inappropriate.  But plaintiff has provided nothing that would support the notion that these four

officials reasonably should have known at the time that their actions violated C.M.'s right of

association or right to due process or any other right guaranteed by the United States

Constitution.  Accordingly, they are entitled to qualified immunity, and the claims against them

must be dismissed.

### C.  <u>The Probation Defendants</u>.

The focus of the Second Claim is that the probation defendants knowingly omitted

"material exculpatory facts" from their applications for an arrest warrant, thereby contributing to

the deprivation of C.M.'s right to be free from unreasonable seizure of his person contrary to the

Fourth and Fourteenth Amendments.  The "facts" omitted were that C.M. was wrongfully

terminated by Aurora Mental Health, and that C.M. was otherwise compliant with the requirements of probation.  C.M. complains that probation and parole officers in general delegate too much authority to SOMB treatment providers, thereby permitting the providers arbitrarily to deny treatment.  This in turn creates an "excuse" to revoke probation or parole.  Plaintiff alleges that probation officers and parole officers "have the ability to seek appropriate waivers to permit any new program to admit an otherwise compliant defendant, such as C.M., and it is the probation and parole officer's responsibility to obtain these waivers."  Third Amended Complaint [ECF No. 71] at ¶¶ 65–66.

I frankly do not understand what "waivers" plaintiff is talking about.  I do understand, and it is not disputed, that participation in an approved sex offender treatment program was a condition of C.M.'s probationary sentence.  *See* ECF No. 82-1 at 2.  He was not participating in such a program and therefore was in technical violation of the terms of his probation on both of the occasions when complaints to revoke probation were filed.  At that point it is up to the court to determine whether probation should be revoked.  One must bear in mind that the information that allegedly caused Aurora Mental Health to terminate C.M., and which indirectly led to his being rejected by three other providers, was not provided by the probation defendants.  The suggestion that these probation officers had a constitutional obligation to attempt to convince these providers to re-admit or to accept C.M. (or to overlook his non-participation in an approved program) is not compelling on its face.  But, again, I need not and do not decide whether these allegations possibly could support a constitutional violation by these defendants.

Plaintiff does not cite any Supreme Court, Tenth Circuit or other controlling authority that would put these defendants on notice that failing to try to convince independent treatment providers to accept a probationer who was otherwise in compliance with the terms of his

probationary sentence, or filing a complaint to revoke probation when a probationer's failure to participate in a mandatory treatment program was arguably not the probationer's fault, would violate the United States Constitution and subject the probation officer personally to civil damages.  An error of judgment is far different from a knowing violation of the constitution.

The one oddity is the allegation that defendant Johnson, with non-defendant Bugucki, issued an order prohibiting C.M. from ever again visiting Estes Park, Colorado.  I assume for present purposes the truth of this allegation, even though it is borderline incredible on its face.  But assuming that such an order was given, it seems obvious that would have exceeded the authority of the probation officers.  That said, the burden is on the plaintiff to demonstrate that these officers are not entitled to qualified immunity.  And, once again, he has failed to cite any Supreme Court, Tenth Circuit or other controlling authority that this Court would construe as putting probation officers on notice that such an order, however poorly it might reflect on their good judgment, would violate the probationer's constitutional rights.  That might seem obvious to plaintiff or his lawyer, but absent some effort by the plaintiff to show that a reasonable probation officer would know that it violated constitutional rights, this Court will not simply assume it to be so.

This Court concludes that each of the three probation officers is entitled to the protection of qualified immunity in this case.

**ORDER**

For the foregoing reasons,

1.  Plaintiff's motion to strike the exhibits to defendant's motion to dismiss [ECF No. 88] is DENIED.

2.  Defendants' motion to dismiss the Third Amended Complaint [ECF No. 82] is GRANTED.

3.  The Court directs the entry of final judgment dismissing this civil action and all claims therein with prejudice.

4.  As the prevailing parties, the defendants are awarded their reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 27th day of January, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge